Frank **BREWSTER**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

**No. 14145.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 20, 1958.

Decided April 15, 1958.

Petition for Rehearing In Banc Denied May 27, 1958.

Mr. John K. Pickens, Washington, D. C., with whom Messrs. Jerry N. Griffin, Donald S. Dawson and M. Joseph Stoutenburgh, Washington, D. C., were on the brief, for appellant.

Mr. William Hitz, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee.

Before REED, Associate Justice of the Supreme Court, retired,* and PRETTY-MAN and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant was convicted under 2 U.S. C.A. § 192 of 31 charges of contempt of Congress committed before the Permanent Subcommittee on Investigations of the Senate Committee on Government Operations.

At the time of the alleged offenses, appellant held three union offices. He was president of Joint Council No. 28, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers; chairman of the Western Conference of Teamsters; and president of Teamsters, Chauffeurs, Warehousemen and Helpers Local 174. The charges covered his refusals (1) to produce the subpenaed books and records of Joint Council No. 28 and the Western Conference of Teamsters; (2) to examine and identify financial reports filed with the Labor Department by Joint Council No. 28 and Local 174 pursuant to the requirements of law; (3) to answer questions relating to the accuracy of these reports and of reports filed with the Bureau of Internal Revenue pursuant to the requirements of law; and (4) to answer questions as to (a) what other reasons appellant had, beside lack of Subcommittee jurisdiction, for his refusal to give information and (b) certain union instructions on the invocation of constitutional privileges.

Appellant's chief contention on this appeal, as it was before the Committee and before the District Court, is that the Committee lacked jurisdiction to conduct the inquiry into his and the union's activities and therefore could delegate no such authority to its Subcommittee.

The Committee on Government Operations, at first called the Committee on Expenditures in the Executive Departments, was one of the fifteen permanent Senate Committees created by the Legislative Reorganization Act of 1946 [1] to replace the "crazy-quilt pattern" of the Senate's then existing 33 committees.[2] The Act sought to "define the jurisdiction of each reorganized committee so as to avoid jurisdictional disputes between them" as had occurred with the supplanted committees.[3] Section 102(1) (g) provided for the Committee:

"(g) (1) Committee on Expenditures in the Executive Departments, to consist of thirteen Senators, to which committee shall be referred all proposed legislation, messages, petitions, memorials, and other matters relating to the following subjects:

"(A) Budget and accounting measures, other than appropriations.

"(B) Reorganizations in the executive branch of the Government.

"(2) Such committee shall have the duty of—

"(A) receiving and examining reports of the Comptroller General of the United States and of submitting such recommendations to the Senate as it deems necessary or desirable in connection with the subject matter of such reports;

"(B) *studying the operation of Government activities at all levels with a view to determining its economy and efficiency;*

"(C) evaluating the effects of laws enacted to reorganize the legislative and executive branches of the Government;

"(D) studying intergovernmental relationships between the United States and the States and municipalities, and between the United

---

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 294(a).

**1.** 60 Stat. 812 et seq.

**2.** S.Rep. No. 1400, 79th Cong., 2d Sess. 2 (1946).

**3.** Id. at 3.

States and international organizations of which the United States is a member.[4]"

To sustain the authority asserted here on behalf of the Committee, appellee relies primarily on subdivision (g) (2) (B), i. e., upon the Committee's duty of "studying the operation of Government activities at all levels with a view to determining its economy and efficiency." This duty, says appellee, required the Committee "to determine whether Government activities in the labor union field were operating with economy and efficiency."

According to appellee, "Government activities in the labor union field" stem from two things: first, the requirement of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., that union organizations file financial and other reports with the Labor Department as a condition to invoking the processes of the National Labor Relations Board;[5] second, the grant of income tax exemptions to labor organizations.[6] Appellee concludes:

> "It is clear that the misuse of union funds and the concealment thereof by false reports are evils whose existence will determine the economy and the efficiency of the Government activities in these labor union fields."

To investigate these evils, the Subcommittee first heard testimony from officials of the Labor Department, the National Labor Relations Board and the Treasury Department concerning the operation of the laws requiring union organization reports. Then it sought information from appellant to determine whether there was misuse of union funds and concealment of such misuse in the reports required by law. At a Subcommittee hearing on January 19, 1957, ap-pellant refused to give this information, on the sole ground that the Subcommittee lacked jurisdiction to make such an inquiry.

It is conceded that Congress has the power to conduct such an inquiry. The question is whether, by the Legislative Reorganization Act of 1946, it gave this power to the Committee of Government Operations with sufficient clarity and certainty to invoke "the aid of the federal judicial system in protecting itself against contumacious conduct." Watkins v. United States, 1957, 354 U.S. 178, 207, 77 S.Ct. 1173, 1189, 1 L.Ed.2d 1273. We think not.

It is not at all clear that the power to investigate the misuse of union funds inheres in the Committee's duty, under § 102(1) (g) of the Act, of "studying the operation of Government activities at all levels with a view to determining its economy and efficiency." We have grave doubts that, merely because unions are required to file reports, their activities or the misuse of their funds or the concealment of such use become "Government activities." We would have the same doubts about whether the requirement that corporations file tax returns makes all corporate affairs "Government activities." Cf. United States v. Kamin, D.C.D.Mass.1956, 136 F.Supp. 791, 802.

According to the logic of appellee's view, the Committee would have authority, under its duty to study the "economy and efficiency" of "the operation of Government activities," to investigate all persons and companies subject to laws dealing with internal revenue, transportation, communications, banking, agriculture, shipping, subversive activities, immigration, health, international relations, etc., etc. This, for all practical purposes, would give the Committee on Government Operations jurisdiction to

---

4. 60 Stat. 816, emphasis supplied.

5. If union officials misuse union funds and file false reports, it is argued, the purposes of the Labor Management Relations Act are thwarted.

6. As the Government puts it: "If union officials misuse union funds, the union is not deserving of the bonanza of tax exemption, and the misused funds will certainly not be declared as individual taxable income by miscreant union officials."

investigate virtually every activity engaged in by every person in the land. It would at least give the Committee a legislative oversight jurisdiction of the executive departments, not only overlapping in blanket fashion the other fifteen permanent Senate committees, but perhaps extending beyond them. While some unavoidable overlap might be viewed as within the contemplation of the Legislative Reorganization Act of 1946, we can hardly say the same for the vast overlap which inheres in the Committee's assertion of power here.[7]

We therefore reverse the judgment of conviction and remand the case to the District Court with instructions to dismiss the indictment.

So ordered.

REED, Associate Justice, retired, (dissenting).

The power of Congress, through its committees to investigate the operation of Government activities, is unquestioned when the facts sought are to inform Congress with a view to legislation. Appellant's objection is that Congress had not authorized this committee to investigate the efficiency of the government processes.

This is not a situation such as Watkins v. United States, 354 U.S. 178, 77 S.Ct. 73 S.Ct. 543, 97 L.Ed. 770, where the of the investigation was not clear, nor of

United States v. Rumely, 345 U.S. 41, 1173, 1 L.Ed.2d 1273, where the purpose meaning of the phrase "lobbying activities" called for definition. Here the Committee had the duty of studying the efficiency of the operation of Government activities at all levels. In directing its investigation toward certain required reports of labor unions to the Government, it was within the scope of its authority. Legislation to protect union funds more fully might be required.

Congress alone has the authority to decide the scope of a committee's jurisdiction. It is only when the scope of the authority granted is uncertain or beyond constitutional power that the judiciary may intervene to protect a contumacious witness. It is conceded by the opinion that only a narrower resolution was required to call for replies to the questions asked.

Such judicial supervision of legislative procedure as this decision imposes is, in my opinion, not only an invasion of legislative prerogatives but hampers congressional investigations. Congress must empower its committees by general language to make needed investigations. The witness may be protected by questions narrowed so as fairly to inform him of the information desired. Watkins v. United States, 354 U.S. 178, 215, 77 S.Ct. 1173, 1 L.Ed.2d 1273.

I would affirm this conviction.

---

7. The Senate strongly indicated its belief that the Committee on Government Operations was without power to conduct the inquiry. When the question of this Committee's jurisdiction was raised before the Senate, it acted, on January 30, 1957, to create the Select Committee on Improper Activities in the Labor or Management Field, authorized to investigate criminal and other improper activities in the labor or management field. S.Res. 74, 85th Cong., 1st Sess., Senator McClellan, Chairman of the Committee on Government Operations and Chairman of its Subcommittee on Investigations, was made Chairman of the Select Committee. On February 15, 1957, appellant turned over the subpenaed records to the staff of the Select Committee and on March 15, 19, 20 and 21, 1957, he testified and answered questions before the Select Committee.